Sheryl D. CLINE, Plaintiff,

v.

ADVANCED NEUROMODULATION SYSTEMS, INC., d/b/a St. Jude Medical Neuromodulation Division, Defendant.

Civil Action No. 1:11–CV–4064–AT.

United States District Court,
N.D. Georgia,
Atlanta Division.

Nov. 7, 2012.

**1376**

Clark H. McGehee, Lanham & McGehee, P.C., Johnson & Ward; William Cyrus Lanham, Lanham & McGehee, P.C., Johnson & Ward, for Plaintiffs.

Moses Kim, Insley & Race, LLC; Kevin Alan Spainhour Insley & Race, for Defendants.

### ORDER

AMY TOTENBERG, District Judge.

This matter is before the Court on Plaintiff's Motion for Leave to File Second Amended Complaint [Doc. 33] and Motion to Lift Stay of Discovery [Doc. 39].

### I.  Background [1]

This case arises from the surgical implantation of a medical device and the injuries sustained from its failure and removal. In an attempt to relieve her chronic back and lower body pain, Plaintiff Sheryl D. Cline had a medical device surgically inserted in her back on December 24, 2009. (Am. Compl. ¶ 5.) This device, called an implantable pulse generator ("IPG"), is designed to relieve pain through electric stimulation of nerves. (*Id.* at ¶¶ 4, 5.) The IPG implanted in the Plaintiff was an Eon Mini Model 3788 Spinal Cord Stimulator ("Model 3788"), which Defendant designed, manufactured, marketed, and sold. (*Id.*)

The Model 3788 relieved Plaintiff's pain initially, but in June 2010, the device stopped working. (*Id.* at ¶ 6.) Plaintiff underwent surgery to extract the Model 3788 on October 20, 2010, and the device was sent to Defendant for analysis. (*Id.* at ¶ 7.) After examination of the device, Defendant wrote Plaintiff's physician on February 15, 2011, explaining that the device failed as "the result of a defective IPG battery." (*Id.* at ¶ 8, Ex. A.)

Plaintiff filed her Complaint for Damages in the State Court of Fulton County, Georgia, on October 24, 2011. On November 23, 2011, Defendants St. Jude Medical, Inc., and St. Jude Medical S.C., Inc., removed the case to this Court based on diversity jurisdiction.

Defendants [2] moved to dismiss the complaint on November 30, 2011. Plaintiff Cline filed a Motion for Leave to File Amended Complaint on December 7, 2011. As Plaintiff could have filed the Amended Complaint as of right under Rule 15(a)(1), the Court granted Plaintiff's motion and directed the Clerk to enter the Amended Complaint on the docket on January 9, 2012. In Plaintiff's Amended Complaint, she put forth two counts: (1) "Breach of Express Warranty" and (2) "Violation of FDA Regulations."

On January 23, 2012, Defendant filed a Motion to Dismiss Plaintiff's Amended Complaint under Federal Rule of Civil

---

1.  The Court derives the factual background primarily from Plaintiff's first Amended Complaint. This background is meant only to provide context and does not constitute actual findings of fact.

2.  On December 8, 2011, the Court entered a Consent Order to Substitute Parties substituting Advanced Neuromodulation Systems, Inc., d/b/a St. Jude Medical Neuromodulation Division for the original named defendants St. Jude Medical, Inc. and St. Jude Medical S.C., Inc. [Doc. 8].

Procedure 12(b)(6). Defendant contended that both counts of the Amended Complaint failed to allege a well-pleaded claim under Rule 8(a)(2) and that both counts were preempted by federal law under the Medical Device Amendment ("MDA") set forth in 21 U.S.C. § 360(c) *et seq.*

On June 15, 2012, 914 F.Supp.2d 1290, 2012 WL 3631320, the Court granted in part and denied in part Defendant's motion to dismiss. (Doc. 25.) The Court concluded that the MDA did not preempt count I ("Breach of Express Warranty") and allowed that claim to go forward.

As to count II ("Violation of FDA Regulations"), Plaintiff argued that it was a non-preempted "parallel claim." A "parallel claim" is a state claim based on a violation of the FDA regulations and is not preempted under the MDA. *Riegel v. Medtronic,* 552 U.S. 312, 321–22, 128 S.Ct. 999, 169 L.Ed.2d 892 (2008). However, to sufficiently plead a parallel claim, a plaintiff must (1) claim the violation of a particular federal regulation and (2) "set forth facts pointing to specific ... requirements that have been violated." *Wolicki–Gables v. Arrow Int'l., Inc.,* 634 F.3d 1296, 1301 (11th Cir.2011). Plaintiff failed to provide specific factual allegations indicating exactly what FDA regulation was violated and in what manner. Thus, the Court granted Defendant's motion to dismiss as to count II.

Plaintiff now requests leave to amend her complaint a second time, arguing that this amendment will cure the deficiencies as to count II. (Doc. 33.) Should the Court deny Plaintiff's request, she then requests that the Court lift the stay of discovery to allow for limited discovery regarding premarket and supplemental premarket approvals by the FDA concerning the manufacture of Defendant's Eon Mini Model 3788 IPG (the medical device at issue in this case). (*See* Doc. 39.)

## II. Motion for Leave to Amend Complaint

### A. Legal Standard

■ Rule 15(a) of the Federal Rules of Civil Procedure provides that a party may amend her complaint after the filing of the answer "only by leave of court or by written consent of the adverse party." Fed. R.Civ.P. 15(a)(2). "The court should freely give leave when justice so requires." *Id.; accord Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962); *Shipner v. Eastern Air Lines, Inc.,* 868 F.2d 401, 406–407 (11th Cir.1989) ("Rule 15(a) severely restricts the district court's freedom, directing that leave to amend shall be freely given when justice so requires."). Nonetheless, the Court may deny leave to amend for a variety of reasons including undue delay, bad faith, undue prejudice to the Defendant, a repeated failure to cure deficiencies by amendments previously allowed, or futility. *Foman,* 371 U.S. at 182, 83 S.Ct. 227; *Hall v. United Ins. Co. of America,* 367 F.3d 1255, 1263 (11th Cir. 2004) ("[D]enial of leave to amend is justified by futility when the complaint as amended is still subject to dismissal." (quoting *Burger King Corp. v. Weaver,* 169 F.3d 1310, 1320 (11th Cir.1999))); *c.f. Bryant v. Dupree,* 252 F.3d 1161, 1163–64 (11th Cir.2001) (reversing district court's decision to deny leave to amend a complaint because there was no evidence of prejudice to the defendant).

### B. Analysis

Defendant asserts that undue delay, undue prejudice, a repeated failure to cure deficiencies, and futility exist here warranting the denial of Plaintiff's request to amend her complaint. Defendant's first three assertions are without merit.

■ First, though Plaintiff's motion to amend her complaint delays the resolu-

tion of this case, there is no indication that such delay is "undue." *See Loggerhead Turtle, et al. v. County Council of Volusia Cnty. Fla.,* 148 F.3d 1231, 1256–57 (11th Cir.1998) (distinguishing between a delay and an "undue delay"). Second, there is no evidence that Defendant would be unfairly prejudiced by granting Plaintiff leave to amend.[3] Finally, though Plaintiff has previously filed a motion to amend her complaint, in granting such motion, the Court noted that Plaintiff could have filed the Amended Complaint as of right under Rule 15(a)(1). "Therefore, it cannot be said that the plaintiff[ ] already had been given an opportunity to amend or that plaintiff[ ] repeatedly had failed to cure deficiencies through previously allowed amendments." *Bryant,* 252 F.3d at 1163–64.

Thus, futility remains the only basis for Defendant's opposition to Plaintiff's motion for leave to amend her complaint. Defendant argues that Plaintiff's claim in count II, as alleged in her Second Amended Complaint, is (1) impliedly preempted by the Food, Drug & Cosmetic Act ("FDCA"), 21 U.S.C. § 337(a) and (2) not a sufficiently pled parallel claim to avoid preemption under the MDA. Thus, Defendant contends that granting Plaintiff leave to amend her complaint would be futile.

### 1. Whether Count II is Impliedly Preempted

Defendant argues that Plaintiff's allegations in count II amount to an attempt to bring a prohibited private action for violations of the Food, Drug & Cosmetic Act ("FDCA"), 21 U.S.C. § 337(a). The FDCA provides that "all such proceedings for the enforcement, or to restrain violations, of [the FDCA, 21 U.S.C. § 301 *et seq.,*] shall be by and in the name of the United States." The Supreme Court has held that this provision impliedly preempts state law claims alleging fraud on the FDA. *Buckman Co. v. Plaintiffs' Legal Committee,* 531 U.S. 341, 348, 121 S.Ct. 1012, 148 L.Ed.2d 854 (2001). A "fraud-on-the-FDA" claim is one in which the manufacturer of a device makes fraudulent representations to the FDA in the PMA process. *Id.* at 347, 121 S.Ct. 1012. Put another way, "a private litigant cannot bring a state-law claim against a defendant when the state-law claim is in substance (even if not in form) a claim for violating the FDCA—that is, when the state claim would not exist if the FDCA did not exist." *Leonard v. Medtronic, Inc.,* No. 1:10–CV–03787–JEC, 2011 WL 3652311, *8 (N.D.Ga. Aug. 19, 2011) (holding that a negligence per se action based on a violation of the FDCA is impliedly preempted because it would not exist without the FDCA) (quoting *Riley v. Cordis Corp.,* 625 F.Supp.2d 769, 777 (D.Minn.2009)).

In *Buckman,* the plaintiff alleged that the manufacturer made fraudulent representations to the FDA about the intended use of a component part of its device. *Id.* Upon this misrepresentation, as the plaintiff alleged, the FDA cleared the device for sale, and this device was subsequently used to plaintiff's detriment. *Id.* The Supreme Court reasoned that allowing this fraud-on-the-FDA claim would skew the "delicate balance" of statutory objectives

---

**3.** Defendant's only support for this contention is that it "ha[s] to address these frivolous motions" and there will be "more undue prejudice if this motion is granted." (Doc. 38 at 21.) These assertions do not allege an "undue prejudice." *See Loggerhead Turtle,* 148 F.3d at 1257 (reasoning that though "[a]ny amendment to an original pleading necessarily involves *some* additional expense to the opposing party," where it is of nominal proportions, such expense is not sufficient prejudice to warrant denial of leave to amend); *c.f. Dannebrog Rederi AS v. M/Y True Dream,* 146 F.Supp.2d 1307, 1317–18 (S.D.Fla.2001) (denying leave to amend where plaintiffs sought to change their theory of the case late in litigation). Plaintiff is not attempting to change her theory of the case.

that the FDA achieves by using its authority to punish and deter fraud against the FDA. *Id.* at 348, 121 S.Ct. 1012.

In count II of Plaintiff's Second Amended Complaint, she alleges a common law negligence claim, not one asserting fraud-on-the-FDA. Thus, this claim is not impliedly preempted by § 337(a). The elements of negligence in Georgia are: "the existence of a legal duty; breach of that duty; a causal connection between the defendant's conduct and the plaintiff's injury; and damages." *Seymour Electrical & Air Conditioning v. Statom,* 309 Ga.App. 677, 710 S.E.2d 874, 877 (2011). To state a claim of negligent manufacturing, the plaintiff must show that Defendant's negligence led to a defect in the product that existed when it left the manufacturer. *Miller v. Ford Motor Co.,* 287 Ga.App. 642, 653 S.E.2d 82, 84 (2007). Plaintiff essentially alleges that Defendant failed to exercise ordinary care in its manufacturing of the Model 3788, which resulted in a defectively assembled device that ultimately caused her injuries. (*See* Second Am. Compl. ¶¶ 27, 42–43.) This is not a fraud-on-the-FDA claim and would exist even absent the FDCA. Thus, Plaintiff's claim in count II of her Second Amended Complaint is not impliedly preempted by § 337(a).

### 2. Whether Count II Sufficiently Pleads a Parallel Claim

Defendant next argues that count II in Plaintiff's Second Amended Complaint fails to satisfy the pleading requirements for a parallel claim based on a violation of FDA requirements. In *Riegel v. Medtronic,* the Supreme Court introduced the concept of "parallel claims," which pro-

vide a narrow exception to MDA preemption. *Riegel v. Medtronic, Inc.,* 552 U.S. 312, 330, 128 S.Ct. 999, 169 L.Ed.2d 892 (2008). The Court explained that state claims based on a violation of the FDA regulations are not preempted under the MDA. *Id.* The Court reasoned that "[s]tate requirements are pre-empted under the MDA only to the extent that they are 'different from, or in addition to,' the requirements imposed by federal law." *Id.* (quoting § 21 U.S.C. 360k(a)(1)). Thus, purposely pled state claims based on violations of FDA regulations are not preempted by § 360k(a), as those claims do not conflict with, but rather parallel, the statutory scheme. *Id.*

The Eleventh Circuit has since specifically addressed the pleading requirements for parallel claims. *Wolicki–Gables v. Arrow Int'l, Inc.,* 634 F.3d 1296, 1301 (11th Cir.2011). In *Wolicki–Gables,* the court stated that a properly alleged parallel claim must both: (1) claim the violation of a particular federal regulation or Pre Market Approval ("PMA") requirement that refers to the device at issue and (2) provide factual detail to substantiate that violation. *Id.* Furthermore, the plaintiff must allege a cognizable link between the violation and the injury alleged. *Id.* at 1301–1302; *Leonard v. Medtronic, Inc.,* No. 1:10–CV03787–JEC, 2011 WL 3652311, at *6 (N.D.Ga. Aug. 19, 2011) (noting that the causal connection between the alleged violations of FDA regulations and the injuries or harm suffered is " 'a critical element' of a properly pled parallel claim" (quoting *Franklin v. Medtronic, Inc.,* No. 09–cv–02301–REB–KMT, 2010 WL 2543579, at *10 (D.Colo. May 12, 2010))).[4]

---

4. Of course, a properly pled parallel claim is a *state* law claim. Defendant argues that Plaintiff failed to allege a state law claim. However, in count II, Plaintiff asserts the elements of common law negligence in Georgia: "the existence of a legal duty; breach of

that duty; a causal connection between the defendant's conduct and the plaintiff's injury; and damages." *Seymour Electrical & Air Conditioning v. Statom,* 309 Ga.App. 677, 710 S.E.2d 874, 877 (2011). (*See* Second Am.

Satisfying the pleading requirements set out in *Wolicki–Gables* is not easy. Indeed, "much of the product-specific information about manufacturing needed to investigate such a [parallel] claim fully is kept confidential by federal law." *Bausch v. Stryker Corp.*, 630 F.3d 546, 558 (7th Cir.2010); *accord In re Medtronic, Inc., Sprint Fidelis Leads Products Liability Litigation*, 623 F.3d 1200, 1212 (8th Cir.2010) (Melloy, J., concurring in part and dissenting in part) (recognizing the practical difficulties facing a plaintiff trying to assert specific FDA violations when crucial information tends to be solely in defendant's possession).[5]

In count II of her Second Amended Complaint, Plaintiff alleges a parallel claim based on two interrelated violations of federal regulations. First, she alleges violations of unspecified Pre Market Approval requirements ("PMAs").[6] (Second Am. Compl. ¶ 23.) However, as just discussed, an allegation of an unidentified PMA specification, alone, is insufficient to state a parallel claim. *Wolicki–Gables*, 634 F.3d at 1301–1302.

However, Plaintiff also directs the Court to violations of the FDA's Current General Manufacturing Practices (CGMPs) relating to the device at issue. (Second Am. Compl. ¶¶ 23, 35–36, Ex. D.) Generally, violations of the CGMPs alone are insufficient to state a parallel claim. This is because CGMPs apply to many different types of devices and are thus not specific to any one device. 62 Fed. Reg. 52601–52654, 52603. CGMPs require manufacturers of medical devices to put in place "quality system[s] ... to ensure that finished devices will be safe and effective and otherwise in compliance with the Federal Food, Drug, and Cosmetic Act." 21 C.F.R. § 820.1(a). The FDA embraces an " 'umbrella' approach ... provid[ing] the framework that all manufacturers must follow" and then requiring manufacturers to "fill in the details that are appropriate to a given device." *Id.* As the CGMPs are general by design, assertions of general CGMP violations, alone, are often insufficient to state a parallel claim, which requires a violation of a device-specific regulation. *Ilarraza v. Medtronic*, 677 F.Supp.2d 582, 588–89 (E.D.N.Y.2009); *In re Medtronic, Inc., Sprint Fidelis Leads Products Liability Litigation*, 592 F.Supp.2d 1147, 1157 (D.Minn.2009), *aff'd*, 623 F.3d 1200 (8th Cir.2010).[7] *But see Bausch v. Stryker Corp.*, 630 F.3d 546, 555 (7th Cir.2010) (holding that plaintiff suffi-

Compl. ¶¶ 23, 42, and 43.) The Court construes this count as alleging a state law claim. (*See* Doc. 8 at 8.)

5. In fact, for this reason, the Seventh and Fifth Circuits have abandoned this heightened pleading standard in favor of notice pleading for parallel claims. *Bausch v. Stryker Corp.*, 630 F.3d 546, 558 (7th Cir.2010) ("[F]ormal discovery is necessary before a plaintiff can fairly be expected to provide a detailed statement of the specific bases for her claim."); *Hughes v. Boston Scientific Corp.*, 631 F.3d 762 (5th Cir.2011).

6. For a discussion of the PMA process, see the Court's June 15, 2012 Order in this case. (Doc. 25, 914 F.Supp.2d at 1297–98, at 5–6.)

7. In *Medtronic*, the Eighth Circuit adopted the rigid pleading requirement urged by Defendant here. *Medtronic*, 623 F.3d at 1207. There, the plaintiff alleged violations of Current General Manufacturing Practices (CGMPs) but could not identify a specific PMA requirement related to the device at issue. *Medtronic*, 592 F.Supp.2d at 1157–58. However, in *Medtronic*, as opposed to the instant case, the plaintiff alleged that state law entitled *every* person with the implanted device to damages and equitable relief, and disclaimed the need for discovery. *Id.* In contrast, the court suggested that "where a specific defective Class II device injured a consumer, and the plaintiff did not have access to the specific federal requirement in the PMA prior to commencing the lawsuit," such a strict pleading standard would not be appropriate. *Id.* at 1206–1207. This is precisely the situation in which the Plaintiff finds herself here.

ciently pled a non-preempted parallel claim by relying on violations of CGMPs); *see also Wolicki–Gables*, 634 F.3d at 1301 ("A plaintiff must allege that '[the] defendant violated a particular federal specification referring to the device at issue.' " (quoting *Ilarraza*, 677 F.Supp.2d at 589)); *c.f. Purcel v. Advanced Bionics Corp.*, No. 3:07–CV–1777–M, 2008 WL 3874713, at *3–4 (N.D.Tex. Aug. 13, 2008) (holding that allegations of CGMP violations specific to the device at issue and other premarket approval requirements were sufficient to state a parallel claim).

In *Ilarraza*, for example, the plaintiff tried to make out a parallel claim merely by providing a list of CGMPs the defendant allegedly violated. *Ilarraza*, 677 F.Supp.2d at 586–88. The court noted that CGMPs are "purposefully broad so as to apply to a broad range of medical devices." *Id.* at 588. As the plaintiff relied on nothing else but this list of violated CGMPs, the court held that he had failed to state a parallel claim. *Id.; see also.*

In contrast, in *Purcel*, the plaintiff alleged CGMP violations specifically focused on moisture problems in the device at issue, a cochlear implant. *Purcel*, 2008 WL 3874713, at *2. The plaintiff further substantiated these violations by alleging that the defendant had found similar moisture issues through its own audit and the FDA later filed suit against defendant noting the same moisture problems. *Id.* at *2–3. As the plaintiff did not just list CGMP violations, but tied these to the specific device at issue, the court held that plaintiff had sufficiently alleged a parallel claim.

Here, in Plaintiff's Second Amended Complaint, she provides more than conclusory assertions of CGMP violations. She also alleges specific facts about when and how these violations occurred in the manufacture of the specific device at issue. According to Plaintiff, on June 29, 2009, the FDA sent Defendant a warning letter regarding numerous, specific CGMP violations in the manufacture of its IPG devices. (Second Am. Compl. ¶ 36 and Ex. D.) These CGMP violations include:

- 21 C.F.R. § 820.100(b) (failing to establish and maintain adequate procedures for implementing corrective and preventive actions in violation);
- 21 C.F.R. § 820.100(a)(2) (failing to investigate the cause of non-conformities related to the product);
- 21 C.F.R. § 820.30(g) (failing to establish and maintain adequate procedures for validating device design in order to ensure that the devices conform to define user needs and intended uses);
- 21 C.F.R. §§ 820.80(d) and 820.80(e) (failure to establish adequate procedures for finished device acceptance); and
- 21 C.F.R. § 820.198 (failure to establish and maintain complaint handling procedures).

(Second Am. Compl. ¶ 36.)

Plaintiff next alleges that based on these CGMP violations, the FDA determined that the Defendant's IPG's were "adulterated within the meaning of § 501(h) of the Act, 21 U.S.C. § 351(h)." (Second Am. Compl, ¶ 36 (quoting Ex. D).) Thus, the FDA stated that it would not provide market approval for the devices related to Defendant's specific CGMP violations until Defendant corrected each violation. (*Id.*) [8]

---

**8.** Defendant notes that the specific model of IPG is not mentioned in the FDA warning letter upon which Plaintiff relies to support her allegations. (Def's Resp. at 14–15.) Even so, the FDA letter indicates that the IPG devices manufactured at Defendant's facility in Plano, Texas were adulterated, and Plaintiff further alleges that the very IPG model at issue here was manufactured at that facility. (Second Am. Compl. ¶ 36, Ex. D.) These allegations are sufficient to warrant limited dis-

Plaintiff alleges that these CGMP violations resulted in the manufacture, assembly and distribution of IPGs in a manner that varied from an approved PMA specification. (*See* Second Am. Compl. ¶ 23.) She explains that because of Defendant's failure to conform to the Common General Manufacturing Practices, Defendant assembled the battery and printed circuit board of its IPG's "out of position." (Second Am. Compl. ¶ 23.) "[T]he [resulting] improper proximity[ ] caused an electrical short which damaged the components, leading to an eventual device failure." (*Id.*) To further support this allegation, Plaintiff alleges that Defendant initiated a number of recalls of its IPGs due to battery failures and loss of power issues. (Second Am. Compl. ¶¶ 37–41, Exs. E–H.) Specifically, according to Plaintiff, Defendant identified a "missed inspection step during manufacturing" and suggested that this missed step led to "weld failures within the internal battery." (*See* Second Am. Compl. ¶¶ 37–38; *see also id.* at ¶¶ 39–40.)

Plaintiff's specific allegations are sufficient to state a plausible parallel claim at this early stage of litigation. *C.f. Wolicki–Gables*, 634 F.3d at 1301–1302 (holding that allegations that fail to identify a violation of an FDA regulation specific to the device at issue and a causal link between such violation and the plaintiff's injuries, are insufficient to state a parallel claim); *Leonard*, 2011 WL 3652311, at *5–6 (same). Thus, the Court **GRANTS** Plaintiff's Motion for Leave to File Second Amended Complaint [Doc. 33].

### III. Motion to Lift Stay

As the Court has granted Plaintiff's request to amend her complaint, the Court

**DENIES AS MOOT** Plaintiff's Motion to Lift Stay of Discovery. [Doc. 39].[9] Discovery shall commence as to both of Plaintiff's claims. However, discovery as to count II shall be limited in the manner discussed below in Section V, and full extended discovery will not commence as to count II until Plaintiff files a Third Amended Complaint identifying the particular PMA specifications she contends were violated and linked to the injuries she suffered.

### IV. Conclusion

Plaintiff's Motion for Leave to File Second Amended Complaint [Doc. 33] is **GRANTED** and her Motion to Lift Stay of Discovery [Doc. 39] is **DENIED AS MOOT.** Pursuant to the Court's August 14, 2012 Order (Doc. 25), discovery as to count I **SHALL COMMENCE** immediately. The Court **ORDERS** limited discovery as to count II, **DIRECTING** Defendant to produce:

(1) the Pre Market Approval ("PMA") specifications and supplemental specifications related to Defendant's manufacture and/or assembly of implantable pulse generators ("IPGs") including the Eon Mini Model 3788 Spinal Cord Stimulator;

(2) any communications between Defendant and the FDA regarding the PMA specifications and supplemental specifications identified in (1) above; and

(3) any materials contained in the PMA file (as defined in 21 C.F.R. § 814.9) related to Defendant's manufacture and/or assembly of the battery and printed circuit board in any IPG including the Eon Mini Model 3788 Spinal Cord Stimulator.

covery regarding PMA specifications for the subject device.

**9.** In the Court's prior Order (Doc. 37) granting the parties' Consent Motion to Stay and Extend Discovery (Doc. 36), the Court established that, upon the Court's ruling on Plaintiff's Motion for Leave to File Second Amended Complaint, discovery shall recommence.

The parties shall work out the terms of a confidentiality consent order consistent with this Court's Guidelines (Doc. 15 at 19–20) and are **DIRECTED** to submit such order within 5 days of the date of this Order. In the event the parties dispute the scope of discovery as to count II, the Court **DIRECTS** them to promptly confer in an attempt to resolve their dispute. If they are unable to resolve the dispute, the parties should by November 27, 2012 submit to the Court a joint submission statement summarizing the issues in dispute as to the limited discovery for count II. (*See* Doc. 15 at 18.)

The limited discovery period provided for count II **SHALL CONCLUDE** 75 days from the date of the approval of the confidentiality consent order. Plaintiff shall file a Third Amended Complaint alleging facts in connection with count II no later than February 5, 2013. Failure to do so will indicate Plaintiff's desire to abandon her parallel claim in count II.[10]

The Clerk is **DIRECTED** to resubmit this matter to the undersigned upon the filing of Plaintiff's Third Amended Complaint or the expiration of the aforementioned time period.

10. Upon Plaintiff's filing of her Third Amended Complaint, the Court shall consider authorizing broader discovery on count II and an extended discovery period. A status conference will be held with the parties as appropriate.