A11A0366. SEYMOUR ELECTRICAL AND AIR CONDITIONING
SERVICE, INC. v. STATOM et al.
(710 SE2d 874)

BARNES, Presiding Judge.

Willie Ed and Betty Statom brought this negligence action against Seymour Electrical and Air Conditioning Service, Inc., alleging that they were injured by carbon monoxide poisoning from a gas furnace that was improperly installed and repaired. Seymour moved for summary judgment and argued, among other things, that there was no competent evidence that the Statoms' alleged injuries were caused by exposure to carbon monoxide. The trial court denied the motion, but granted a certificate of immediate review. We granted Seymour's application for interlocutory appeal and now reverse.

On appeal from the trial court's denial of a motion for summary judgment, we apply a de novo standard of review and construe the evidence, and all reasonable conclusions and inferences drawn from it, in the light most favorable to the nonmoving party. *Cowart v. Widener*, 287 Ga. 622, 624 (1) (a) (697 SE2d 779) (2010). Construed in this manner, the evidence showed that Seymour is a Georgia corporation that installs and repairs residential heating, air conditioning, and electrical systems. In May 2007, Seymour installed a new gas furnace in the Statom house. The furnace was fueled by propane gas.

In the summer of 2008, the Statoms' propane gas supplier detected a gas leak and determined that it was coming from the furnace. In July 2008, Seymour returned to the house to fix the propane gas leak in response to the Statoms' complaints. As part of its repairs, Seymour replaced the furnace gas valve. However, Seymour failed to convert the replacement valve nozzle from its factory setting for natural gas to the setting for propane gas. The failure to properly convert the nozzle led to incomplete combustion inside the furnace, the product of which was soot and carbon monoxide. Normally, carbon monoxide is vented outside a house through the flue pipe that extends through the roof, but if a crack develops in the metal housing of the furnace, carbon monoxide can escape into the house.

After the initial installation of the furnace in May 2007, but before the faulty replacement of the valve nozzle in July 2008, the Statoms began experiencing a variety of medical symptoms, including headaches, nausea, burning throats, burning eyes, stomach pain,

fatigue, and memory loss. As a result of her symptoms, Mrs. Statom was hospitalized for three days and missed at least a month of work.

The Statoms moved out of their house for approximately six months while efforts were made to identify and correct any problems that might be causing their symptoms. Several consultants inspected the house for potential environmental hazards. During the course of these inspections, mold was discovered in the house, and some of the consultants believed that it was the cause of the Statoms' symptoms. Consequently, the Statoms hired a construction firm that performed mold cleaning operations, replaced the carpet, demolished and replaced two bathrooms, and replaced the kitchen cabinets. The construction firm finished the cleaning and remodeling work in October 2008.

In November 2008, a service technician with a different heating and air conditioning company discovered that the replacement valve nozzle on the furnace, which had been installed in July 2008, had not been properly converted from natural gas to propane gas. The technician corrected the problem and noted in his service order invoice that the "[f]urnace was not correctly converted to propane gas, which caused carbon monoxide [and] soot to enter [the] house."[1]

In December 2008, the Statoms moved back into their house. Over the ensuing months, their medical symptoms substantially subsided. The Statoms then commenced this negligence action against Seymour, contending that their medical symptoms had been the result of carbon monoxide poisoning and seeking damages for physical and emotional injury. Seymour moved for summary judgment, arguing, among other things, that there was no competent evidence of causation. Concluding that genuine issues of material fact existed, the trial court denied the motion.

> To prevail at summary judgment under OCGA § 9-11-56, the moving party must demonstrate that there is no genuine issue of material fact and that the undisputed facts, viewed in the light most favorable to the nonmoving party, warrant judgment as a matter of law. OCGA § 9-11-56 (c). A defendant may do this by showing the court that the documents, affidavits, depositions and other evidence in the record reveal that there is no evidence sufficient to create a jury issue on at

---

[1] In a later deposition, the technician claimed that the service order invoice was incorrect and that he did not detect any carbon monoxide in the house despite using a carbon monoxide detector. The parties dispute whether the service order invoice constituted sufficient competent evidence that carbon monoxide leaked from the furnace into the Statom house. We need not resolve this dispute in light of our conclusion, discussed infra, that the Statoms failed to present sufficient competent evidence showing that their alleged exposure to carbon monoxide caused their medical symptoms.

least one essential element of plaintiff's case. If there is no evidence sufficient to create a genuine issue as to any essential element of plaintiff's claim, that claim tumbles like a house of cards. All of the other disputes of fact are rendered immaterial.

(Emphasis omitted.) *Lau's Corp. v. Haskins*, 261 Ga. 491 (405 SE2d 474) (1991).

The essential elements of a negligence claim are the existence of a legal duty; breach of that duty; a causal connection between the defendant's conduct and the plaintiff's injury; and damages. *Wilson v. Mallard Creek Holdings*, 238 Ga. App. 746, 747 (519 SE2d 925) (1999). "Questions of negligence generally are for the jury, and may be resolved on summary judgment only where the evidence is plain, palpable and undisputable." (Punctuation and footnote omitted.) *Allstate Ins. Co. v. Sutton*, 290 Ga. App. 154, 158 (3) (658 SE2d 909) (2008). Nevertheless, "[n]o matter how negligent a party may be, if his act stands in no causal relation to the injury[,] it is not actionable." (Citation and punctuation omitted.) *Hudson v. Swain*, 282 Ga. App. 718, 721 (639 SE2d 319) (2006). And for a plaintiff's negligence claim to survive summary judgment, the evidence of causation must be based on more than mere guesses or speculation. Id. at 722, n. 2.

Here, the evidence, construed favorably to the Statoms, demonstrates that Seymour was negligent in its installation of the furnace and in its subsequent replacement of the valve nozzle. The issue is whether there is any competent evidence that Seymour's negligence caused the Statoms' medical symptoms, which they claim were the result of carbon monoxide leaking from the furnace. Notably, although the Statoms sought medical attention for their symptoms, they have failed to come forward with any evidence that a physician ever tested them for carbon monoxide poisoning or diagnosed them as having that condition. Nor have the Statoms cited to any expert medical testimony submitted to the trial court establishing a causal link between their medical symptoms and their alleged exposure to carbon monoxide. Rather, the Statoms simply argue that a jury could infer that the carbon monoxide from the furnace caused their medical symptoms without any need for expert medical evidence because the dangers associated with its inhalation are well known.

We conclude that summary judgment should have been granted to Seymour because no genuine issue of material fact exists with respect to causation. While expert testimony is unnecessary to establish causation in many negligence cases, some cases raise causal issues that can be resolved by a jury only with the assistance of experts with specialized medical knowledge. *Cowart*, 287 Ga. at 627

(2) (b). And resolution of the causal issues in the present case clearly requires such knowledge:

> The diagnosis and potential continuance of a disease or other medical condition are medical questions to be established by physicians as expert witnesses and not by lay persons. Thus, we have required expert medical testimony, based at least on reasonable probability, *to establish a causal link between exposure to a substance and a medical condition.*

(Punctuation and footnotes omitted; emphasis supplied.) *Sutton*, 290 Ga. App. at 160 (3) (b) (plaintiffs were required to present expert medical testimony to establish causal link between their respiratory conditions and exposure to mold in their house). See *Cowart*, 287 Ga. at 628 (2) (b) (citing *Sutton* with approval and noting that "the link between a defendant's actions and the plaintiff's injury is beyond common knowledge and experience" in "toxic tort" cases); *Magnan v. Miami Aircraft Support*, 217 Ga. App. 855, 857 (2) (459 SE2d 592) (1995) (plaintiff required to present expert medical testimony establishing causal link between his eye problems and exposure to a pesticide).

Indeed, we affirmed summary judgment to a defendant in a case in which the plaintiffs contended that they were injured by carbon monoxide poisoning from an improperly installed gas water heater, where the plaintiffs similarly failed to present any medical evidence establishing a causal link between their injuries and their alleged exposure to carbon monoxide. See *Wilson*, 238 Ga. App. at 747-748. Compare *Atkins v. MRP Park Lake*, 301 Ga. App. 275, 276 (687 SE2d 215) (2009) (blood gas test revealed that plaintiff had excessive amount of carbon monoxide in her blood, and emergency room physician and subsequent treating physician diagnosed plaintiff with carbon monoxide poisoning); *Harper v. Barge Air Conditioning*, 300 Ga. App. 901, 903 (686 SE2d 668) (2009) (physical precedent only) (plaintiff's blood tested positive for high levels of carbon monoxide, and plaintiff was diagnosed with and hospitalized for carbon monoxide poisoning). Likewise, we have held that while it may be common knowledge that certain fumes are generally dangerous to breathe, a plaintiff still must present expert medical evidence establishing that the fumes caused *that particular plaintiff's* medical problems. See *Shiver v. Ga. & Fla. Railnet*, 287 Ga. App. 828, 830 (2) (652 SE2d 819) (2007) (discussing claim brought under Federal Employer's Liability Act, but noting that such claims require a plaintiff to "prove the traditional common law elements of negligence," including causation) (punctuation and footnote omitted).

This is especially true if there is some evidence of exposure to toxic substances or chemicals other than the one alleged by the plaintiff as the source of his or her injuries, as in the present case where there was some evidence of exposure to mold.

In light of this precedent, and given the absence of any expert medical evidence establishing a causal link between the Statoms' symptoms and their alleged exposure to carbon monoxide, we conclude that the trial court erred in denying Seymour's motion for summary judgment. We therefore reverse the judgment and remand with the instruction that the trial court enter summary judgment in favor of Seymour.

*Judgment reversed and case remanded. Adams and Blackwell, JJ., concur.*

DECIDED MAY 26, 2011.

*Michael L. Wetzel*, for appellant.

*Hurt, Stolz & Cromwell, James W. Hurt, Jr., Bell & Mulholland, Lloyd N. Bell*, for appellees.