**FOURTH DIVISION**
**DOYLE, P. J.,**
**ANDREWS and BOGGS, JJ.**

**NOTICE: Motions for reconsideration must be**
***physically received* in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**(Court of Appeals Rule 4 (b) and Rule 37 (b), February 21, 2008)**
**http://www.gaappeals.us/rules/**

**June 28, 2012**

# In the Court of Appeals of Georgia

A12A0583. REININGER et al. v. O'NEILL et al.                DO-027

A12A0584. O'NEILL et al. v. REININGER et al.                DO-028

DOYLE, Presiding Judge.

After Peter and Diana Reininger purchased a home from Richard and Elaine O'Neill, they discovered that the basement leaked water. The Reiningers filed this action against the O'Neills, alleging fraudulent misrepresentation, negligent concealment, and negligent repair. The trial court granted in part the O'Neills' motion for summary judgment. In case number A12A0583, the Reiningers challenge the trial court's partial grant of summary judgment on their claims of fraudulent misrepresentation and negligent repair, while in A12A0584, the O'Neills contend that the trial court should have granted their renewed motion for summary judgment on

the Reiningers' remaining claim of negligent concealment. For the reasons that follow, we affirm in part and reverse in part.

Summary judgment is proper when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. OCGA § 9-11-56 (c). A de novo standard of review applies to an appeal from a grant of summary judgment, and we view the evidence, and all reasonable conclusions and inferences drawn from it, in the light most favorable to the nonmovant.[1]

So viewed, the evidence shows that in late May 2006, the Reiningers contracted with the O'Neills to buy the O'Neills' 16-year-old home, which had no previous owners besides the O'Neills. Prior to this time, Mr. O'Neill, in an effort to abate water entry into his basement when heavy rainfall occurred, dug a six to seven foot hole in an area where a retaining wall in the rear of the home intersected the brick facade of the home. Mr. O'Neill discovered an area of separation, which he attempted to close using a bead of sealant and a bead of hydraulic cement. Mr. O'Neill deposed that further leakage did not occur prior to the sale of the home in the summer of 2006.

---

[1] *Matjoulis v. Integon Gen. Ins. Corp.*, 226 Ga. App. 459 (1) (486 SE2d 684) (1997).

The purchase and sale agreement signed by the parties contained an "As-Is Clause": "Property Sold 'As Is'. All parties agree that Property is being sold 'as is,' with all faults including but not limited to lead-based paint and lead-based paint hazards and damage from termites and other wood destroying organisms. Seller shall have no obligation to make repairs to property"; and a Merger Clause:

> Binding Effect, Entire Agreement, Modification, Assignment: This Agreement constitutes the sole and entire agreement between the parties and shall be binding upon the parties and their successors, heirs, and permitted assigns. No representation, promise or inducement not included in this Agreement shall be binding upon any party hereto. This Agreement may not be amended, modified, or waived except by the written agreement of Buyer and Seller.

The agreement also included two attachments to the purchase and sale agreement form, including the Property Disclosure Statement, on which Mr. O'Neill had checked "Yes" to the following questions: "(a) Has there been any water leakage, water accumulation, or dampness within the basement, crawl space[,] or other part of the main dwelling at or below grade?"; and "(b) Have any repairs been made to control any water or dampness problems in the basement, crawl space, or other parts of the main dwelling at or below grade?" The O'Neills did not supply any detail about these answers in the section for "additional explanations or disclosures." Mr.

3

Reininger, however, deposed that Mr. O'Neill verbally disclosed a water pipe leak in the basement, that Mr. O'Neill verbally disclosed that he had previously experienced a leak and repaired another area in the basement closet, and that Mr. O'Neill verbally disclosed that he had previously experienced a leak around a crack in the basement wall, which he repaired.

Although the couples closed on June 30, 2006, the Reiningers did not move into the property until May 2007, and during the interim, they visited the property infrequently. There were times during the year after closing that the Reiningers noticed the accumulation of water in the basement after a rain near a utility door. The Reiningers had a home inspection after signing the purchase and sale agreement, which inspection showed that the utitlity door and one garage door had water damage on the doors' exteriors and would need replacement.

In early April 2008, the Reiningers notified the O'Neills that

[s]ince purchasing the house from you we have come to realize the extent of damage to the property was greater than described. . . . We would appreciate a few moments of your time so we may discuss resolving these matters. Should you wish, you may provide us with the name and policy information of your homeowner's insurance so we can contact them directly. . . .

4

Approximately one month later, the Reiningers filed suit in magistrate court, which suit later was transferred to state court, where an amended complaint was filed in March 2009. In February 2010, the Reiningers declared in court that they intended to rescind the contract and filed an amendment to their complaint.

In its order granting in part the O'Neills' renewed motion for summary judgment, the trial court found that because the Reiningers failed to rescind the contract, they were bound by the terms therein. Thus, the merger clause contained in the purchase and sale agreement barred the Reiningers' fraudulent misrepresentation claim. With regard to the Reiningers' negligent repair claim, the trial court determined that it failed as a matter of law because the O'Neills were not builders/sellers of the home. Nevertheless, with regard to the Reiningers' negligent concealment claim, the trial court determined that a question of fact existed, and it denied the O'Neills' motion for summary judgment as to this claim.

Generally speaking,

> [c]aveat emptor ("Let the buyer beware") is a common-law doctrine which serves as the general rule with regard to the purchase of realty. The long-standing recognition of the existence of an exception to the application of caveat emptor where the seller's fraud induced a purchaser of realty to buy the land makes caveat emptor unavailable as a defense to a seller, whether a builder or non-builder, when the seller

5

engages in fraud, whether it be "active fraud" or "passive concealment fraud." Thus, where the seller of a house knows the house has serious defects and fails to disclose the defects to the buyer who is unaware of the defects and could not have discovered them in the exercise of due diligence, the suppression of the facts constitutes fraud to which caveat emptor is not a viable defense.[2]

*Case No. A12A0583*

## 1. *Negligence*

The Reiningers first claim that the trial court erred by finding as a matter of law that they could not maintain a claim of negligent repair against the O'Neills. We disagree.

In *Cendant Mobility Financial Corp.*,[3] the Georgia Supreme Court explained the *Worthy v. Holmes*[4]

exception to the application of caveat emptor to a negligence action against the builder/seller of a dwelling affixed to real estate: where a dwelling is sold containing latent defects which the builder in the

---

[2] (Citation and footnotes omitted.) *Cendant Mobility Fin. Corp v. Asuamha*, 285 Ga. 818, 819-820 (684 SE2d 617) (2009).

[3] Id.

[4] 249 Ga. 104 (287 SE2d 9) (1982), affirming *Holmes v. Worthey*, 159 Ga. App. 262 (282 SE2d 919) (1981)

6

exercise of ordinary care knew or should have known and which the buyer could not have reasonably discovered in the exercise of ordinary care, it is only right that the builder should be liable in negligence.[5]

Based on this exception, the home-buyer in *Cendant Mobility* alleged a claim for negligent repairs made to a pre-existing home against the non-builder/seller of the home.[6] The Supreme Court declined to extend the *Worthy* exception to the general rule of caveat emptor beyond claims against builders/sellers, explaining that barring fraud or breach of contract "it is inappropriate to found a cause for negligence on mere defective or inadequate conditions in a used house, about which the buyer was not overtly or passively misled. Caveat emptor is still the general rule."[7]

Here, the trial court determined that the Reiningers' claim of negligent repair against Mr. O'Neill failed as a matter of law based on the holding of *Cendant Mobility Fin.* The Reiningers contend that the fact that Mr. O'Neill himself performed the repairs distinguishes their claim from that of the plaintiff in *Cendant Mobility Fin.* because the defendant in that case hired a company to perform the repairs.

---

[5] (Punctuation omitted.) Id. at 820, citing *Worthey*, 249 Ga. at 105 (2).

[6] See *Cendant Mobility Fin. Corp.*, 285 Ga. at 820.

[7] (Punctuation omitted.) Id. at 821-822.

Nevertheless, because the O'Neills were not builders/sellers of the dwelling purchased by the Reiningers, the trial court did not err when it granted summary judgment on this claim.[8]

2. *Fraud*

> Traditionally two actions have been available to a buyer in which to sue a seller for alleged misrepresentation in the sale. The buyer could affirm the contract and sue in contract for breach or he could seek to rescind the contract and sue in tort for alleged fraud and deceit. But . . . affirming the sales contract does not eliminate a tort claim by the buyer that the sale was fraudulently induced. A suit for damages by the defrauded party for the fraud committed is not a suit for the violation of the contract, but is one for a tort and involves affirmance of the contract. . . . It can not be said that merely affirming the contract by the defrauded party will necessarily deprive him of the right to sue for damages for the fraud inducing him to make the contract, as the right to affirm the contract and the right to sue for damages for the fraud coexist.

---

[8] See *Cendant Mobility Fin. Corp.*, 285 Ga. at 821-822 ("There is probably no such thing as a perfect house and to hold the homeowner liable for any such defect would be to hold all homeowners liable for every flaw and defect, when in fact the purchaser knows or is placed upon reasonable notice that the house is not new and, almost certainly, not perfect.") (punctuation omitted). Cf. *Morgan Constr. Co. v. Kitchings*, 110 Ga. App. 599, 600 (139 SE2d 417) (1964), (holding that a plaintiff cannot maintain a nuisance claim based upon damage to a house resulting from a defect constructed into the house that was concealed from the plaintiff by the builder and/or the seller; instead, the applicable causes of action are fraud against the seller and/or negligent construction against the builder).

Moreover[,] there are differences between claims based on misrepresentations and those based on fraudulent concealment. When a buyer claims the seller made oral or written misrepresentations outside the sales contract to induce the sale, and elects to affirm the sales contract and sue, the same contractual defenses apply whether the suit is brought as a breach of contract or as a tort claim for fraud. In either case, because the sales contract was affirmed, the buyer is bound by the terms of the contract and subject to defenses asserted by the seller based on the contract. Accordingly, . . . entire agreement clauses in affirmed sales contracts are commonly asserted as a defense by sellers to estop buyers from claiming they relied on misrepresentations made outside the contract. On the other hand, where a buyer affirms the sales contract and sues claiming, not that the seller made extracontractual oral or written misrepresentations about the purchased property, but that the seller actively or passively concealed damage or defects in the purchased property, there is no basis for using an entire agreement clause in the sales contract as a defense to the suit.[9]

(a) The Reiningers argue that the trial court erred by granting summary judgment as to their fraudulent misrepresentation claim. We disagree.

The trial court correctly determined that the sale contract's merger clause precluded the Reiningers' claim that the O'Neills committed fraudulent

_____

[9] (Citations and punctuation omitted.) *Browning v. Stocks*, 265 Ga. App. 803, 805-806 (2) (595 SE2d 642) (2004).

misrepresentation concerning the water leakage into the basement. As this court has repeatedly explained, "[t]he entire agreement clause operates as a disclaimer, establishing that the written agreement completely and comprehensively represents all the parties' agreement. [The Reiningers are], therefore, barred from claiming that [they] relied on an alleged misrepresentation not contained within the agreement."[10]

The fraudulent misrepresentation claim is thus defeated because the Reiningers cannot show that they relied upon any prior assurances regarding the state of the basement from prior documents provided by or assertions made by the O'Neills.

While the Reiningers maintain that the trial court erred by finding that their fraud claim was barred by their failure to properly attempt to rescind the contract prior to filing suit, this argument is without merit. As the Georgia Supreme Court recently explained in *Novare Group v. Sarif*,[11]

> [i]t is well-settled law in Georgia that a party who has the capacity and opportunity to read a written contract cannot afterwards set up fraud in the procurement of his signature to the instrument based on oral representations that differ from the terms of the contract. Statements that directly contradict the terms of the agreement or offer future promises

---

[10] (Punctuation and citations omitted.) *Peck v. Lanier Golf Club*, __ Ga. App. __ , __ (b) (__ SE2d __) (Case no. A11A2100; decided Mar. 8, 2012).

[11] 290 Ga. 186 (718 SE2d 304) (2011).

10

simply cannot form the basis of a fraud claim for the purpose of cancelling or rescinding a contract. In fact, the only type of fraud that can relieve a party of his obligation to read a written contract and be bound by its terms is a fraud that prevents the party from reading the contract.[12]

Here, the contract clearly states that the "Property is being sold in its present condition, without warranties or guarantees of any kind by Seller or Brokers. No representations concerning the condition of Property are being relied upon by Buyer except as disclosed herein or stated in the Purchase and Sale Agreement." Thus, any allegedly fraudulent statements concerning the state of the property made prior to the contract are not of "the type of fraud that allows a party to cancel or rescind a contract"[13] because the Reiningers have not alleged that the merger clause or as-is clause within the contract were concealed from them prior to signing.[14]

---

[12] (Citations omitted.) Id. at 188-189 (2).

[13] Id. at 189 (2).

[14] Id. at 190 (3). Additionally, the record does not contain evidence that the Reiningers attempted to rescind the contract prior to serving the lawsuit on the O'Neills, and as the Georgia Supreme Court has recently restated, if "a party elects to rescind the contract, he must do so prior to filing the lawsuit." Id. at 188 (1).

Accordingly, the trial court properly granted summary judgment to the O'Neills on the Reiningers' fraudulent misrepresentation claim.

*Case No. A12A0584*

(b) The O'Neills contend that the trial court erred by denying their motion for summary judgment with regard to the Reiningers' fraudulent concealment claim because the O'Neills did not build the home and the contract contained a valid merger clause. We agree and reverse.

Based on the facts presented here, the Reiningers' fraudulent concealment claim fails. First, the O'Neills indicated on the disclosure statement that the water leakage had occurred in the basement and that repairs had been made thereto. Moreover, Mr. Reininger deposed that Mr. O'Neill verbally disclosed that multiple leaks had occurred in the basement and that he had attempted to repair them. The only allegation presented by the Reiningers that the O'Neills concealed the leak is that Mr. O'Neill removed pre-existing pegboard from a wall and cut a hole in the drywall to

investigate the leak, thereafter replacing the drywall and pegboard.[15] But this act was simply part of the disclosed repair and is not evidence of concealment.

Finally, as the Georgia Supreme Court explained in *Sarif*, because the "[Reiningers] did not properly elect rescission as a remedy, and more importantly, were not entitled to rescission as a remedy, they are bound by the terms of their agreement[, which clearly indicated they were purchasing the property as is and identified prior water entry into the basement]. Therefore, [the Reiningers] cannot maintain their claims for fraud in the inducement based on active concealment [or] negligent misrepresentation . . . ."[16]

Accordingly, the trial court erred by denying the O'Neills' motion for summary judgment as to this claim, and we hereby reverse.

*Judgment affirmed in part, reversed in part. Andrews and Boggs, JJ., concur.*

---

[15] *Grossman v. Brown & Webb Builders*, 255 Ga. App. 897, 899 (1) (567 SE2d 116) (2002) ("A defendant who does not bear the burden of proof at trial need not produce evidence or disprove the plaintiff's claim on summary judgment. Rather, the defendant meets its summary judgment burden by pointing out by reference to the affidavits, depositions and other documents in the record that there is an absence of evidence to support the plaintiff's case.") (punctuation and footnotes omitted).

[16] 290 Ga. at 190 (3).