**THIRD DIVISION**
**ANDREWS, P. J.,**
**DILLARD and MCMILLIAN, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules/

**July 9, 2013**

# In the Court of Appeals of Georgia

A13A0403. NIXON, et al. v. PIERCE COUNTY SCHOOL DISTRICT.

DILLARD, Judge.

Katina Nixon was injured when her economy-sized sedan was struck from behind by a school bus while she was nine-months pregnant. After her baby was determined to have cerebral palsy caused by a perinatal stroke, she brought an action for negligence, on her own behalf and as the "next friend" of her daughter, against the Pierce County School District (hereinafter, "the District"). Following discovery, the District filed a motion for partial summary judgment, alleging that Nixon failed to create a genuine issue of material fact as to the cause of the injuries sustained by her daughter. The trial court granted the motion, and Nixon appeals. For the reasons set forth *infra*, we reverse.

The facts pertinent to this appeal are essentially undisputed. The record shows that on the afternoon of March 10, 2008, Nixon, then 38- to 39-weeks pregnant, was injured when a District school bus rear-ended her vehicle. During the collision, Nixon was thrust forward, causing bruises across her chest and lap from the seat belt. She also suffered injuries to her shoulders and neck, which she described as unbearably painful. Nixon immediately called 911 and reported being injured, and was subsequently taken from the accident to the hospital by an ambulance. At the hospital, the attending physician decided to induce labor the following morning. On March 11, Nixon gave birth to her daughter, Kylee.

Up to the point of the accident, Nixon had experienced a normal and healthy pregnancy with no complications whatsoever. Likewise, at no time were there any signs of complications with her baby. At birth, Kylee appeared healthy and gave no outward indications that she might suffer from any neurological-development issues.

When Kylee was approximately six-months old, however, her mother noticed that she favored her left hand and generally did not use her right hand to hold or grab objects. When Kylee was a year old and it became more apparent that she struggled to crawl due to limited usage of her right side, Nixon discussed her observations with Kylee's pediatrician. At that time, the pediatrician referred them to a pediatric

2

neurologist, who later determined that Kylee was suffering from cerebral palsy as a result of a perinatal[1] stroke.

In March 2010, Nixon filed a negligence action against the District on her own behalf and as "next friend" of Kylee, alleging, *inter alia*, that Kylee's stroke and resulting cerebral palsy were caused by the traumatic impact of the bus accident. The neurologist was thereafter deposed and, during the course of that deposition, she testified definitively that Kylee suffered cerebral palsy as a result of a perinatal stroke. She also testified that perinatal strokes are commonly caused by trauma suffered in utero, and opined that Kylee's stroke occurred between 30 weeks gestation and one month of age.[2] And the neurologist further deposed that it was entirely possible that the trauma inflicted upon Nixon and Kylee during the bus accident proximately caused Kylee's stroke and the resulting cerebral palsy. But the neurologist could not testify to a causal connection between the perinatal stroke and

---

[1] The neurologist defined "perinatal" as sometime before birth and up to one month after delivery.

[2] The neurologist testified that due to the nature of the neurological disorder, it is common and expected that the symptoms of cerebral palsy are not recognized in a child until that child begins attempting movements, such as crawling or walking, and observations are made that the child is delayed in reaching certain developmental milestones.

bus accident beyond a 50-percent possibility because perinatal strokes, such as Kylee's, are often "silent" in that they occur without clinical signs, rendering it impossible to pinpoint exactly when they happen. As such, the neurologist concluded that Kylee's stroke could have been caused by the bus accident or, alternatively, could have been caused by a heart defect[3] or simply could have been a spontaneous event.

The District filed a motion for partial summary judgment, contending that Nixon failed to create a genuine issue of material fact on the causal connection between Kylee's injuries and the bus accident. In its motion, the District asserted that whether the accident caused Kylee to suffer a perinatal stroke was a specialized medical question that required expert testimony within a reasonable degree of certainty in order to reach a jury, and that the neurologist's 50-percent possibility testimony fell below that standard.

The trial court agreed that Nixon failed to create a jury question as to whether Kylee sustained an injury as a result of the bus accident and granted the District's motion. Nixon appeals, arguing both that the question as to whether the bus accident

---

[3] Kylee was born with a small hole between the chambers of her heart and was diagnosed with either a ventricular septal defect or a patent foramen ovale; this condition, however, was deemed "insignificant" and seemingly closed without any medical intervention.

caused Kylee's stroke is not a specialized medical question and, further, that the record evidence presents a jury question as to causation. We agree with the District that the causal connection between the stroke and bus accident presents a specialized medical question that requires expert testimony but, for the reasons set forth *infra*, we hold that the record evidence is sufficient to create a jury question on that issue.

At the outset, we note that our review of the trial court's grant of summary judgment is *de novo*, and that summary adjudication is appropriate only if the moving party "demonstrate[s] that there is no genuine issue of material fact and that the undisputed facts, viewed in the light most favorable to the nonmoving party, warrant judgment as a matter of law."[4] The defendant may do this by "showing the court that the documents, affidavits, depositions and other evidence in the record reveal that there is no evidence sufficient to create a jury issue on at least one essential element of plaintiff's case."[5] Significantly, however, when ruling on a motion for summary judgment, "the opposing party should be given the benefit of all reasonable doubt, and the court should construe the evidence *and all inferences and conclusions*

---

[4] *Knight v. Roberts*, 316 Ga. App. 599, 600 (730 SE2d 78) (2012); *see* OCGA § 9-11-56 (c).

[5] *Knight*, 316 Ga. App. at 600 (punctuation omitted); *see* OCGA § 9-11-56 (c).

*therefrom* most favorably toward the party opposing the motion."[6] Moreover, issues of negligence, including causation, are generally for the jury, "and may be resolved on summary judgment only [when] the evidence is plain, palpable, and undisputable."[7] With these guiding principles in mind, we turn now to Nixon's enumerations of error.

1. Nixon first alleges that the trial court erred by implicitly requiring expert testimony to show a causal connection between the bus accident at issue and Kylee's stroke, arguing that because this action is one for simple negligence, expert testimony on causation is not required. We disagree.

The general rule is that there is "no requirement that expert testimony must be produced by a plaintiff to a negligence action in order to prevail at trial."[8] But even in simple negligence cases, plaintiffs must come forward with expert evidence in

---

[6] *Knight*, 316 Ga. App. at 600-01 (punctuation omitted) (emphasis supplied); *see* OCGA § 9-11-56 (c) ("[N]othing in this Code section shall be construed as denying to any party the right to trial by jury where there are substantial issues of fact to be determined.").

[7] *Allstate v. Sutton*, 290 Ga. App. 154, 158 (3) (658 SE2d 909) (2008) (punctuation omitted).

[8] *Self v. Exec. Comm. of the Ga. Baptist Convention, Inc.*, 245 Ga. 548, 549 (266 SE2d 168) (1980).

order to survive a defense motion for summary judgment "when medical questions relating to causation are involved."[9] Medical questions are presented when "the existence of a causal link between the defendant's conduct and the plaintiff's injury cannot be determined from common knowledge and experience."[10]

---

[9] *Cowart v. Widener*, 287 Ga. 622, 627 (2) (a) (697 SE2d 779) (2010) (punctuation omitted).

[10] *Cowart,* 287 Ga. at 627 (2) (b). *Compare Seymour Elec. & Air Conditioning Serv., Inc. v. Statom*, 309 Ga. App. 677, 680 (710 SE2d 874) (2011) (causal connection between inhalation of carbon monoxide and memory loss presents medical question because "we have required expert medical testimony . . . to establish a causal link between exposure to a substance and a medical condition"); *Allstate*, 290 Ga. App. at 159-60 (3) (b) (expert testimony needed to establish the link between ongoing respiratory conditions and mold because "[t]he diagnosis and potential continuance of a disease or other medical condition are medical questions to be established by physicians as expert witnesses and not by lay persons" (punctuation omitted)); *Lancastar v. USAA Cas. Ins. Co.*, 232 Ga. App. 805, 808 (3) (a) (502 SE2d 752) (1998) (physical precedent only) ("[T]he connection between flaring fibromyalgia and [a motor-vehicle] accident is not the type of common sense deduction that lay factfinders have been found competent to make.") *with Self*, 245 Ga. at 549 (jury permitted to consider whether a blow to the head contributed to decedent's death without the need for expert testimony); *Jester v. State* 250 Ga. 119, 119-20 (1) (296 SE2d 555) (1982) ("[T]hat a stab wound penetrating entirely through the heart causes death, is not a matter in the common experience of the human race which should even require expert testimony."); *Jordan v. Smoot*, 191 Ga. App. 74, 75 (1) (380 SE2d 714) (1989) (causal link between car accident and back pain does not require expert testimony because "the injury sustained is a matter which jurors must be credited with knowing by reason of common knowledge").

And here, we have little trouble concluding that the case *sub judice* presents a medical question that requires expert testimony. The causal link between a motor-vehicle accident causing injures to a pregnant mother and a later-discovered perinatal stroke suffered by her baby cannot be "determined from common knowledge and experience."[11] Consequently, expert testimony is indeed required to establish causation.

2. Nixon further argues that, regardless of whether the issue of causation presents a medical question, she has presented a sufficient combination of expert and non-expert evidence to create a genuine issue of material fact and, therefore, summary judgment was inappropriate. Giving, as we must, Nixon the benefit of all reasonable doubt and construing the evidence and all inferences and conclusions therefrom in her favor,[12] we agree.

When expert testimony on causation is required, the testimony generally "must show as an evidentiary threshold that the expert's opinion regarding the causation is based . . . on the determination that there was a reasonable probability that the

---

[11] *Cowart,* 287 Ga. at 627 (2) (b). *See generally Statom*, 309 Ga. App. at 680; *Allstate*, 290 Ga. App. at 159-60 (3) (b); *Lancastar*, 232 Ga. App. at 808 (3) (a) (physical precedent only).

[12] *See Knight*, 316 Ga. App. at 600-01.

negligence caused the injury."[13] The natural consequence of requiring an expert to testify to probability in matters of causation is that "testimony as to the *possibility* of a causal relation between a given accident or injury and the subsequent . . . impaired physical or mental condition of the person injured is not sufficient, *standing alone*."[14] It is also well established, however, that expert testimony regarding the possibility of a causal link between negligence and injury, when combined with other non-expert evidence indicating that a relationship exists, "is sufficient to establish the causal relation" so as to create a jury question.[15] Thus, medical expert testimony as to

---

[13] *Zwiren v. Thompson*, 276 Ga. 498, 501 (578 SE2d 862) (2003).

[14] *Nat'l Dairy Prods. Corp. v. Durham*, 115 Ga. App. 420, 423 (154 SE2d 752) (1967) (emphasis supplied).

[15] *Id.*; *see Hodson v. Mawson*, 227 Ga. App. 490, 492 (4) (489 SE2d 855) (1997) ("While medical testimony as to the mere possibility of a causal relation between a given event and the subsequent physical or mental condition of an injured person will not establish the causal relationship, medical evidence which shows the possibility of a causal relationship in conjunction with other evidence, non-expert in nature, indicating that such a relation exists, is sufficient to establish the causal relation." (punctuation omitted)); *Ga. Cas. & Surety Co. v. Jernigan*, 166 Ga. App. 872, 877 (5) (305 SE2d 611) (1983) ("There are a number of cases which, while apparently admitting that medical evidence showing only a possibility of a causal relation between an accident or injury and subsequent death or physical or mental impairment is not, by itself, sufficient to establish such relation, uphold the view that such evidence, in conjunction with other evidence, non-expert in nature, indicating that such a relation exists, although likewise not sufficient by itself to establish the relation, or in conjunction with admitted or obvious facts and circumstances of the

9

causation that shows only a reasonable possibility as opposed to a probability "may be aided by other medical or non-medical evidence that, in totality, shows causation, even though the medical opinion is weak . . . ."[16]

Given the foregoing, we conclude that summary judgment in this case was inappropriate. As set forth *supra*, Nixon's expert testified that Kylee's cerebral palsy resulted from a stroke; the stroke was perinatal, most likely occurring between 30 weeks gestation and one month post-delivery; perinatal strokes commonly result from trauma suffered in utero; and the accident in question was sufficiently traumatic to cause the stroke. The expert concluded that it was entirely possible that the trauma inflicted on Nixon and the baby during the bus accident proximately caused Kylee's stroke. Though this testimony, standing alone, is not sufficient to overcome summary judgment, it creates a jury issue when considered in conjunction with evidence that

---

case showing that death or physical disability would naturally and probably result from the injury, is sufficient to establish the causal relation." (punctuation omitted)); *accord Estate of Patterson v. Fulton-Dekalb Hosp. Auth.*, 233 Ga. App. 706, 708 (2) (505 SE2d 232) (1998). *Cf. Eberhart v. Morris Brown College*, 181 Ga. App. 516, 519 (1) (352 SE2d 832) (1987) ("Had appellant adduced . . . medical testimony that his subsequent physical condition was the possible result of his prior football injury [in addition to his medical bills], the jury would perhaps have been authorized to award appellant those medical expenses." (citation omitted)).

[16] *Rodrigues v. Ga.-Pacific Corp.*, 290 Ga. App. 442, 446 (661 SE2d 141) (2008) (punctuation omitted).

(1) Nixon experienced a normal and healthy pregnancy with no complications prior to being involved in a serious accident (*i.e.*, one in which her economy-sized sedan was struck from behind with considerable force by a school bus);[17] and (2) the accident fell squarely within the time frame that the expert opined the stroke was suffered and Nixon had not been involved in any other accidents during her pregnancy.[18] And because this is not a case in which the evidence is "plain, palpable,

---

[17] Photographs taken shortly after the accident show substantial damage to the rear of Nixon's vehicle, and the collision was serious enough to cause Nixon pain and significant bruising across her abdomen and midsection.

[18] *See Rodrigues,* 290 Ga. App. at 445-46 (reversing summary judgment because even assuming expert testified only that chlorine exposure was a possible cause of plaintiff's pneumonia, evidence was supplemented by testimony as to plaintiff's apparent good health prior to exposure and rapid onset of symptoms following exposure); *Durham*, 115 Ga. App. at 423-24 (jury's finding of causation authorized by expert's opinion that collision may have placed pressure on decedent's pelvic organs and caused dormant cancerous tumors to activate and spread when considered in connection with decedent's prior good health and subsequent decline in health); *see also Hodson*, 227 Ga. App. at 492 (4) (expert testimony opining a possible connection between accident and injury suffered to plaintiff's hip area "was properly admitted along with non-expert testimony which authorized the jury to find a causal connection between the injury and the accident"); *Hert v. Gibbs*, 191 Ga. App. 471, 472 (1) (382 SE2d 191) (1989) (trial court did not err in denying appellant's motions for directed verdict or j.n.o.v. because weak expert testimony as to a causal connection between accident and plaintiff's grand mal seizure six weeks later was supplemented by non-expert evidence that authorized jury's finding).

11

and undisputable,"[19] summary judgment was improper. Accordingly, we reverse the trial court's order granting summary judgment in favor of the District.

*Judgment reversed. McMillian, J., concurs. Andrews, P. J., concurs in judgment only.*

---

[19] *Allstate*, 290 Ga. App. at 158.