**THIRD DIVISION**
**DOYLE, P. J.,**
**HODGES and WATKINS, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**October 30, 2024**

# In the Court of Appeals of Georgia

A24A0822. ALLEN et al v. HARRIS.

WATKINS, Judge.

Steve Harris sued Khristopher Allen and Colleen Allen, alleging that they failed to disclose water intrusion in a home they renovated and sold to him. The trial court denied in part the Allens' motion for summary judgment,[1] but certified its order for interlocutory review. We granted their motion for interlocutory appeal and, for the reasons set forth below, now reverse the trial court's denial of the Allens' motion for summary judgment.

---

[1] The trial court granted the Allens' motion for summary judgment as to Harris's claim of negligent construction. No cross-appeal has been taken.

Summary judgment is proper when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law.[2] A de novo standard of review applies to an appeal from a grant of summary judgment, and we view the evidence, and all reasonable conclusions and inferences drawn from it, in the light most favorable to the nonmovant.[3]

So viewed, the evidence shows that, in May 2018, the Allens bought a house on Henderson Mill Road in Atlanta (the "House") with the intent to renovate and sell it. In 2020, the Allens sold the House to Harris, who had an inspection done before closing. Less than three weeks after Harris moved in, he noticed water intrusion in the basement.

Harris sued the Allens, and after amendment, alleged claims for fraudulent inducement, negligent construction, breach of contract, negligence, and intentional infliction of emotional distress. Harris also sought to recover punitive damages and attorney fees. The Allens moved for summary judgment on all claims. Following oral

[2] See OCGA § 9-11-56 (c).

[3] (Citation and punctuation omitted.) *Reininger v. O'Neill*, 316 Ga. App. 477, 478 (729 SE2d 587) (2012).

argument, the trial court granted summary judgment only with respect to the negligent construction claim.

The trial court denied summary judgment on Harris's claims of fraud and breach of contract, finding that, viewed most favorably to Harris, there were patent water leaks when the Allens purchased the House. The court found that, even after completing repairs to the roof and renovations, the Allens observed water leaks but did not investigate further.

In denying summary judgment on the intentional infliction of emotional distress and negligence claims,[4] the trial court did not specifically address the Allens' arguments that Harris failed to point to any specific evidence of "extreme and outrageous" conduct or that there was no independent tort (negligence) duty apart from the contract, finding only that "the Allens' duty to Harris [was] set forth in the parties' agreement and in common law." The trial court further found that the causation of Harris's physical ailments, which "all began with his discovery of the water leaks, required medical treatment, and resulted in his doctor's recommendation

---

[4] While the trial court did not include the negligence claim in its heading or refer to it specifically in its Conclusions of Law, in light of how the Allens combined the issues in their summary judgment briefing, it is clear from the trial court's findings that it denied summary judgment on the negligence claim.

that he vacate the property[,]" could be determined from common knowledge and experience[,] eliminat[ing] the requirement for expert medical testimony." In short, the trial court found that "issues of negligence, including causation, are generally for the jury," and that "Harris' pleadings are sufficient to withstand summary judgment."

In denying summary judgment on the punitive damages and attorney fees claims, the trial court addressed only the Allens' argument that they were derivative of the tort and contract claims. The court did not address the Allens' alternative arguments that Harris had not pointed to any evidence that the Allens' actions were sufficiently egregious to support a claim for punitive damages or to any facts that would support an award of fees and expenses under OCGA § 13-6-11. This appeal followed.

1. The Allens argue that the trial court erred in denying their motion on Harris's fraud claim because they did not have actual knowledge of unremedied defects at the time of closing. We agree.

> Generally speaking, caveat emptor ("Let the buyer beware") is a common-law doctrine which serves as the general rule with regard to the purchase of realty. The long-standing recognition of the existence of an

4

exception to the application of caveat emptor where the seller's fraud induced a purchaser of realty to buy the land makes caveat emptor unavailable as a defense to a seller, whether a builder or non-builder, when the seller engages in fraud, whether it be "active fraud" or "passive concealment fraud." Thus, where the seller of a house knows the house has serious defects and fails to disclose the defects to the buyer who is unaware of the defects and could not have discovered them in the exercise of due diligence, the suppression of the facts constitutes fraud to which caveat emptor is not a viable defense.[5]

"In both active and passive concealment, the seller must know of the defect the buyer claims was concealed."[6] When the seller was not the builder of the home,[7] constructive knowledge is not enough:

> In all cases of fraud involving a concealment of a material fact, scienter, or knowledge of the alleged falsehood, is an essential element of the tort.

---

[5] (Citation and punctuation omitted.) *Reininger*, 316 Ga. App. at 480.

[6] *Ainsworth v. Perrault*, 254 Ga. App. 470, 475 (2) (563 SE2d 135) (2002).

[7] See generally *Cendant Mobility Finance Corp. v. Asuamah*, 285 Ga. 818, 822 (684 SE2d 617) (2009) ("To dispel any doubt, we hold that the 'negligent construction' exception to caveat emptor exempts from the defense of caveat emptor only a negligence claim by a homeowner seeking recovery against the builder/seller of the home for latent building construction defects about which the purchaser/homeowner did not know and in the exercise of ordinary care would not have discovered, which defects either were known to the builder/seller or in the exercise of ordinary care would have been discovered by the builder/seller.").

In fraudulent concealment actions the allegedly defrauded party must prove that the alleged defrauder had actual, not merely constructive, knowledge of the fact concealed. There must be some evidence of the silent party's actual knowledge that the defect exists at the time of the sale from which his moral guilt in concealing it can be inferred.[8]

Here, the Allens both testified that they believed the isolated instances where they saw minor water leaks while they owned the House had been remedied at the time of sale. The Allens are not contractors, and neither of them did any of the renovation work themselves. Instead, they hired a project manager and various contractors, as well as an engineer to assist with the renovations, which included finishing the basement. The unfinished basement had already been framed, including a steel support beam that ran along the ceiling and was part of the original construction of the House in 1961.

During the course of their renovations of the House, the Allens noticed a water leak around the chimney. After they hired a contractor to fix the flashing around the chimney, Mr. Allen performed hours of water testing on the roof around the chimney without producing a similar intrusion of water into the house. On one occasion, the

---

[8] (Citation and punctuation omitted.) *Wolf v. Middleton*, 305 Ga. App. 784, 788 (700 SE2d 598) (2010).

Allens noticed a small "puddle" of water on the basement floor near the basement fireplace, which they attributed to water coming down the chimney after a bad storm.

After the sale of the House, Harris had destructive testing done and found that water had entered through a hole in the masonry where the beam met the exterior wall of the House and that this hole was the main culprit for water entering the basement. The undisputed evidence in the record is that the hole was never exposed while the Allens owned the house. Harris's speculation that the Allens must have known about this area of water intrusion is not sufficient to survive summary judgment on his fraud claim.[9]

Similarly, Harris has failed to point to evidence that the Allens knew about an active leak at the patio or knew that any other repairs their contractors performed (such as on a leak manifesting in the kitchen ceiling) did not fix the problems. Thus, the trial court erred by denying the Allens' motion for summary judgment on the fraud claim.

2. The Allens contend that the trial court similarly erred in denying their motion for summary judgment on Harris's breach-of-contract claim because they did

---

[9] See *Atlanta Partners Realty, LLC v. Wohlgemuth*, 365 Ga. App. 386, 397-398 (6) (878 SE2d 615) (2022).

not fail to disclose hidden defects of which they had actual knowledge. Again, we agree.

The Agreement did not incorporate a Seller's Property Disclosure Statement. Instead, a Special Stipulation to the Agreement provided:

> All parties acknowledge that Seller has not provided a Seller's Property Disclosure Statement regarding the condition of the Property. The Buyer shall have the right and responsibility to thoroughly inspect the Property during the Due Diligence Period. Seller understands that not providing a written disclosure does not relieve the Seller from their legal obligation to disclose any hidden defects they have knowledge of.

Harris bases this breach-of-contract claim on the same allegations as his fraud claim. We concluded in Division 1 that the evidence, even construed in the light most favorable to Harris, fails to show that the Allens had actual knowledge of any undisclosed hidden defects. Based on the unambiguous language of the contract,[10] Harris's claim of breach of contract also fails as a matter of law.[11]

---

[10] See *Ainsworth*, 254 Ga. App. at 476 (4) ("[W]here the language of a contract is clear, unambiguous, and capable of only one reasonable interpretation, no construction is necessary or even permissible by the trial court.") (citation and punctuation omitted).

[11] The original complaint sought rescission, as well as damages for fraud, breach of contract, and negligence. "In general, a party alleging fraudulent inducement to

3. The Allens argue that the trial court erred in denying summary judgment on Harris's claim for intentional infliction of emotional distress because the alleged failure to disclose concealed or hidden defects is not "extreme and outrageous" as a matter of law. The Allens contend further that the emotional distress Harris allegedly suffered was not severe.

> Georgia law recognizes the tort of intentional infliction of emotional distress. The burden which the plaintiff must meet in order to prevail in this cause of action is a stringent one, however. In order to sustain a cause of action in this state for the tort of intentional infliction of emotional distress, a plaintiff must show that defendant's actions were so terrifying or insulting as naturally to humiliate, embarrass or frighten the plaintiff.[12]

---

enter a contract has two options: (1) affirm the contract and sue for damages from the fraud or breach; or (2) promptly rescind the contract and sue in tort for fraud." *Novare Group v. Sarif*, 290 Ga. 186, 188 (1) (718 SE2d 304) (2011) (citation and punctuation omitted); see also OCGA § 13-4-60. Harris did not include a claim for rescission in the amended complaint, but it is still included in his prayer for relief. The parties do not address rescission on appeal, and it appears that he has elected to affirm the contract rather than rescind the sales contract. See generally *Ben Farmer Realty Co. v. Woodard*, 212 Ga. App. 74 (441 SE2d 421) (1994).

[12] (Citations and punctuation omitted.) *Bridges v. Winn-Dixie Atlanta, Inc.*, 176 Ga. App. 227, 229 (1) (335 SE2d 445) (1985).

All four elements of the tort must be present in order for an action to lie: "(1) The conduct must be intentional or reckless; (2) The conduct must be extreme and outrageous; (3) There must be a causal connection between the wrongful conduct and the emotional distress; (4) The emotional distress must be severe."[13]

We agree with the Allens that as a matter of law, the alleged conduct does not rise to the level of outrageousness or egregiousness necessary to sustain an allegation of intentional infliction of emotional distress.[14] Harris makes no argument to support this claim beyond the same set of facts that he alleges support his breach-of-contract and other claims. "To warrant the imposition of liability for [a claim of intentional infliction of emotional distress], the conduct must be so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be

---

[13] (Citation and punctuation omitted.) *Hill v. City of Fort Valley*, 251 Ga. App. 615, 616 (1) (a) (554 SE2d 783) (2001).

[14] See, e.g., *McLendon v. Harper*, 349 Ga. App. 581, 590 (2) (a) (826 SE2d 412) (2019) (affirming summary judgment against the plaintiff on his intentional infliction of emotional distress claim where the record could support a finding that the plaintiff's coworker vindictively led his supervisors and investigators to suspect that the plaintiff had stolen a work vehicle and that the supervisors cravenly allowed the prank to unfold, even after learning that the plaintiff had simply moved the vehicle to a more secure location).

regarded as atrocious, and utterly intolerable in a civilized community."[15] Viewed in the light most favorable to Harris, "[the Allens'] conduct cannot be described as extreme, outrageous, atrocious, intolerable or beyond the bounds of decency."[16] Accordingly, the trial court improperly denied the Allens' motion for summary judgment on the claim of intentional infliction of emotional distress.[17]

4. In an argument addressed to both the intentional infliction of emotional distress and negligence claims, the Allens contend that evidence of causation is lacking

---

[15] (Citation and punctuation omitted.) *Hill*, 251 Ga. App. at 616 (1) (a) (holding that a city's and funeral home's alleged failure to obtain express permission prior to moving the plaintiffs' mother's grave was not extreme and outrageous as a matter of law); see also *United Parcel Svc. v. Moore*, 238 Ga. App. 376, 377 (519 SE2d 15) (1999) ("The rule of thumb in determining whether the conduct complained of was sufficiently extreme and outrageous is whether the recitation of the facts to an average member of the community would arouse her resentment against the defendant so that she would exclaim 'Outrageous!'").

[16] See *Frank v. Fleet Finance*, 238 Ga. App. 316, 318 (518 SE2d 717) (1999) (holding that, as a matter of law, a lender's conduct in failing to close on a contract for the sale of a residence to its current tenant and then evicting him did not rise to the requisite level of outrageousness and egregiousness to sustain a claim for intentional infliction of emotional distress).

[17] See *McClung Surveying v. Worl*, 247 Ga. App. 322, 326-327 (3) (541 SE2d 703) (2000) (holding that, as a matter of law, the alleged misrepresentation on a survey that a house was not in a flood hazard zone was not sufficiently extreme or outrageous).

and the trial court erred in considering Harris's claims of damages for physical injuries without expert medical testimony. We agree.

> [I]n deciding whether the plaintiff is required to come forward with expert testimony to withstand a defense motion for summary judgment, the critical question is not whether the causation element involves a "medical question" in the generic sense of the term. Rather, it is whether, in order to decide that the defendant's conduct proximately caused the plaintiff's injury, a lay jury would have to know the answers to one or more "medical questions" that, as the case law has defined that term, can be answered accurately only by witnesses with specialized expert knowledge.[18]

Here, the trial court found that the causation of Harris's physical maladies, which included loss of sleep, increased blood pressure, and a persistent cough, could be determined from common knowledge and experience, eliminating the need for expert medical testimony. Distinguishing this case from one in which the alleged injuries were not realized until six or more months after the event,[19] the court

---

[18] *Cowart v. Widener*, 287 Ga. 622, 629 (2) (b) (697 SE2d 779) (2010).

[19] See *Nixon v. Pierce County School Dist.*, 322 Ga. App. 745, 749 (746 SE2d 225) (2013) (physical precedent only) ("The causal link between a motor-vehicle accident causing injuries to a pregnant mother and a later-discovered perinatal stroke suffered by her baby cannot be determined from common knowledge and experience. Consequently, expert testimony is indeed required to establish causation.") (citations

emphasized that Harris "suffered injuries that were realized immediately upon moving into the property, and, at least with regard to the cough, ceased to exist when he left the property."

In *Allstate Insurance Company v. Sutton*, a homeowner sued her homeowners' insurance company and the company that provided remediation services after a plumbing leak in the house.[20] This Court reversed the denial of summary judgment on the homeowner's claim for personal physical injury because the homeowner failed to provide expert testimony establishing a causal link between the respiratory problems she and her daughter had suffered and their exposure to mold.[21] Noting that this Court had required expert medical testimony to establish a causal link between exposure to a substance and a medical condition,[22] the *Sutton* Court held that "[t]he

and punctuation omitted).

[20] 290 Ga. App. 154, 159-160 (3) (b) (658 SE2d 909) (2008).

[21] Id. at 159-160 (3) (b).

[22] See *Magnan v. Miami Aircraft Support*, 217 Ga. App. 855, 857 (2) (459 SE2d 592) (1995) (requiring expert medical testimony based at least on reasonable probability that the plaintiff's continuing eye problems were caused by his exposure to pesticide); see also *Seymour Elec. & Air Conditioning Svc., Inc. v. Statom*, 309 Ga. App. 677, 679 (710 SE2d 874) (2011) (expert medical testimony required to establish a causal link between the plaintiffs' medical symptoms and their alleged exposure to carbon monoxide).

13

diagnosis and potential continuance of a disease or other medical condition are medical questions to be established by physicians as expert witnesses and not by lay persons."[23]

The trial court here relies solely on the timing and specifically Harris's allegations that "his physical ailments . . . all began with his discovery of the water leaks, required medical treatment, and resulted in his doctor's recommendation that he vacate the property [and] that, once he vacated the property, his persistent cough ended." Assuming arguendo that Harris has established that he was exposed to mold or some other environmental condition as a result of some actionable negligence by the Allens, Harris still needed to establish through expert medical testimony a causal link between the exposure and his physical ailments.[24] Because he failed to do this, the

___

[23] (Citations and punctuation omitted.) *Sutton*, 290 Ga. App. at 160 (3) (b). See also *Zephaniah v. Ga. Clinic, P.C.*, 368 Ga. App. 325, 330 (3) (890 SE2d 86) (2023) (Although the plaintiff experienced instantaneous pain due to the alleged negligence of a technician during a blood draw, "the vast majority of [her] claimed damages [for almost 50 medical conditions and approximately 20 symptoms that she contended resulted from or were triggered by the incident] undoubtedly require expert testimony to establish causation.") (footnotes omitted).

[24] See *Ovation Condominium Assn., Inc. v. Cox*, 369 Ga. App. 481, 485 (893 SE2d 867) (2023) ("To establish proximate cause, a plaintiff must show a legally attributable causal connection between the defendant's conduct and the alleged injury. The plaintiff must introduce evidence which affords a reasonable basis for the

trial court erred in denying the Allens' motion for summary judgment on Harris's claims for intentional infliction of emotional distress and negligence.

5. Finally, the Allens argue that the trial court erred in denying their motion for summary judgment on Harris's claim for punitive damages.[25] We agree.

Under OCGA § 51-12-5.1 (b), "[p]unitive damages may be awarded only in such tort actions in which it is proven by clear and convincing evidence that the defendant's actions showed willful misconduct, malice, fraud, wantonness, oppression, or that entire want of care which would raise the presumption of conscious indifference to consequences." Further, "[a] claim for punitive damages

---

conclusion that it is more likely than not that the conduct of the defendant was a cause in fact of the result. A mere possibility of such causation is not enough; and when the matter remains one of pure speculation or conjecture, or the probabilities are at best evenly balanced, it becomes the duty of the court to grant summary judgment for the defendant.") (citations and punctuation omitted).

[25] The Allens do not challenge the trial court's denial of their motion for summary judgment as to Harris's claim for attorney fees under OCGA § 13-6-11 or under the contract. See generally *Cabrel v. Lum*, 289 Ga. 233, 240 (6) (710 SE2d 810) (2011) ("The expenses of litigation recoverable pursuant to OCGA § 13-6-11 are ancillary and may only be recovered where other elements of damage are also recoverable.") (citation and punctuation omitted). Nonetheless, because we have determined that summary judgment is proper on all of Harris's claims, summary judgment is likewise proper on his claims for attorney fees.

is derivative in nature and will not lie in the absence of a finding of compensatory damages on an underlying claim."[26]

Because Harris's substantive claims fail, so does his claim for punitive damages. But nevertheless, Harris's claim for punitive damage also fails as a matter of law because punitive damages are not available absent a showing of special circumstances of aggravation or outrage.[27] As set forth in Division 3, Harris has failed to make such a showing of outrageousness. Based on this holding, we need not reach the Allens' related argument that Harris has failed to identify any evidence that would enable him to prove by clear and convincing evidence that their actions were sufficiently egregious.

---

[26] (Citations and punctuation omitted.) *George v. Hercules Real Estate Servs.*, 339 Ga. App. 843, 849 (1) (c) (795 SE2d 81) (2016).

[27] See *Brooks v. Gray*, 262 Ga. App. 232 (1) (585 SE2d 188) (2003) ("Negligence, even gross negligence, is inadequate to support a punitive damage award. . . . Something more than the mere commission of a tort is always required for punitive damages. There must be circumstances of aggravation or outrage.") (citations and punctuation omitted); see also *DaimlerChrysler Motors Co. v. Clemente*, 294 Ga. App. 38, 52 (5) (668 SE2d 737) (2008) (holding that because the plaintiff's underlying tort claims failed as a matter of law, the defendant was entitled to summary judgment on the plaintiff's claims for punitive damages and attorney fees).

In sum, we agree with the Allens that the trial court improperly denied their motion for summary judgment.

*Judgment reversed. Doyle, P. J., and Hodges, J., concur.*