**FIRST DIVISION**
**BROWN, C. J.,**
**BARNES, P. J., and WATKINS, J.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**November 3, 2025**

# In the Court of Appeals of Georgia

A25A0897. CLARK et al v. ASHLEY et al.

WATKINS, Judge.

Eric Clark ("Eric") and his parents, Willie Clark, Jr., and Katrice M. Clark, appeal the orders granting summary judgment to Chad Ashley, Charles Miles, Jonathan Perry, Wendell Perry, and Quintin Walker (collectively the "Coach Defendants"), and James Bradberry and his employer Children's Healthcare of Atlanta (collectively the "Medical Defendants") after Eric was severely injured during a high school football game. For the reasons below, we hold that although the Coach Defendants are not entitled to official immunity, summary judgment was nonetheless properly granted on the merits to all defendants.

We apply a de novo standard of review to an appeal from a grant of summary judgment and view the evidence, and all reasonable

conclusions and inferences drawn from it, in the light most favorable to the nonmovant. A defendant may obtain summary judgment by showing an absence of evidence supporting at least one essential element of [each of] the plaintiffs' claim[s].[1]

So viewed, the record shows that in August 2019, Eric was on the Hampton High School junior varsity football team. He participated in a tackling drill during practice and was injured. The parties dispute what symptoms Eric evidenced after this injury. Eric claims that he lost consciousness for what he "assumed to be" about 60 seconds, that coaches asked him questions like how many fingers one of the coaches was holding up and what was his birthday, and that he temporarily felt "completely paralyzed." Eric further claims that immediately after the drill he told Coach Quentin Walker he "got knocked out" and "couldn't move" and Walker responded "you'll be alright." All of the coaching staff denied knowing at that time that Eric experienced any of these symptoms. Instead, they claim that Eric only reported a shoulder injury. Coach Jonathan Perry testified that during practice after the injury he told Eric to see

---

[1] (Citation and punctuation omitted.) *Sanchez-Curtis v. Roe*, 372 Ga. App. 197, 198 (904 SE2d 87) (2024).

the team's athletic trainer James Bradberry, but Bradberry acknowledged that he was not at the practice. Eric sat out for the rest of practice.

Eric reported his symptoms to his father at night after practice. The next day, Eric's father e-mailed Chad Ashley, the head football coach, stating that Eric suffered a "stinger"[2] at practice and felt temporarily paralyzed after the hit he took in the drill. Ashley called Eric's father after the e-mail and said he would instruct Eric to get checked out by Bradberry.

The parties dispute whether Bradberry ever evaluated Eric. Eric claims that he was never instructed to be evaluated by Bradberry and that no evaluation occurred. Bradberry testified that he was informed by coaches that Eric had injured his shoulder the day before in practice and likely suffered a stinger. Bradberry denied being notified of or observing that Eric had any concussion symptoms such as loss of consciousness, headache, or photophobia. Bradberry claims that he evaluated Eric's shoulder and cleared him to resume weight training and game play.

---

[2] Appellants' proposed expert witness testified that a "stinger" is an injury to the brachial plexus nerve network, which supplies nerve function to the shoulder, caused by a stretching or contusion of those nerves resulting in a temporary "burning or stinging or tingling" sensation. The defendants do not dispute this definition.

Eric played in a game two days after his practice injury. Right before halftime, Eric was injured while tackling another player. Eric fell on his side in the fetal position, immediately felt paralyzed, and was transported to Grady Hospital by ambulance. Eric was diagnosed with an incomplete spinal cord injury related to a spinal cord contusion. Fortunately, Eric has recovered better than anticipated and has regained his ability to walk.

Eric and his parents sued, alleging that defendants[3] negligently failed to follow rules promulgated by the Georgia High School Association ("GHSA") that would have required Eric to be placed into a concussion protocol which would have prohibited him from participating in the game in which he was injured. The Coach Defendants and the Medical Defendants separately moved for summary judgment. The trial court granted summary judgment to all defendants, and Eric and his parents timely appealed.

1. Appellants contend the trial court erred in finding that the Coach Defendants were entitled to official immunity as a matter of law. We agree.

The Georgia Constitution provides, in part:

---

[3] Other members of the coaching staff were originally named in the complaint, but were subsequently dismissed by Appellants with the trial court's permission.

Except as specifically provided by the General Assembly in a State Tort Claims Act, all officers and employees of the state or its departments and agencies may be subject to suit and may be liable for injuries and damages caused by the negligent performance of, or negligent failure to perform, their ministerial functions and may be liable for injuries and damages if they act with actual malice or with actual intent to cause injury in the performance of their official functions. Except as provided in this subparagraph, officers and employees of the state or its departments and agencies shall not be subject to suit or liability, and no judgment shall be entered against them, for the performance or nonperformance of their official functions.[4]

In other words, "[i]n the absence of malice or actual intent to injure, which is not alleged here, public officials are immune from damages that result from their performance of discretionary functions. This immunity for discretionary acts does not extend to ministerial acts."[5] "One's entitlement to [official] immunity is an entitlement not to stand trial rather than a mere defense to liability, and thus is a threshold issue[.]"[6]

---

[4] Ga. Const. of 1983, Art. I, Sec. II, Par. IX.

[5] (Citations and punctuation omitted.) *Wilson v. Anderson*, 374 Ga. App. 668, 670 (1) (913 SE2d 813) (2025).

[6] (Citation and punctuation omitted.) *Siegrist v. Herhold*, 365 Ga. App. 828, 830 (880 SE2d 336) (2022).

"Whether the act of a public official is ministerial or discretionary is determined by the facts of each individual case, particularly the facts specifically relevant to the official's act or omission from which the alleged liability arises. Where a situation involves multiple official acts, some may be discretionary; others may be ministerial."[7]

> [A] ministerial act is commonly one that is simple, absolute, and definite, arising under conditions admitted or proved to exist, and requiring merely the execution of a specific duty. A discretionary act, however, calls for the exercise of personal deliberation and judgment, which in turn entails examining the facts, reaching reasoned conclusions, and acting on them in a way not specifically directed.[8]

> As the Supreme Court of Georgia explained in defining ministerial acts: These acts as simple, absolute, and definite, arising under conditions admitted or proved to exist, and requiring merely the execution of a specific duty, are ministerial, that is, if the condition "A," then the required response "B."[9]

---

[7] (Citations and punctuation omitted.) *Wilson*, 374 Ga. App. at 668, 670 (1).

[8] (Citation and punctuation omitted.) *Daley v. Clark*, 282 Ga. App. 235, 243 (2) (a) (638 SE2d 376) (2006).

[9] (Citations and punctuation omitted.) *Wilson*, 374 Ga. App. at 670 (1) (2025).

"A ministerial duty may be established by evidence such as a written policy, an unwritten policy, a supervisor's specific directive, or a statute."[10]

In 2013, the General Assembly enacted the Return to Play Act of 2013. Under that law,

> [e]ach local board of education . . . shall adopt and implement a concussion management and return to play policy [providing that] . . . [i]f a youth athlete participating in a youth athletic activity exhibits symptoms of having a concussion, that athlete shall be removed from the game, competition, tryout, or practice and be evaluated by a health care provider; and . . . [i]f a youth athlete is deemed by a health care provider to have sustained a concussion, the coach or other designated personnel shall not permit the youth athlete to return to play until the youth athlete receives clearance from a health care provider for a full or graduated return to play.[11]

In accordance with this law, GHSA published a concussion policy, which is similar, but not identical to the statutory language.[12] Specifically, the GHSA policy provides, in relevant part:

---

[10] Id.

[11] OCGA § 20-2-324.1 (b) (2) , (3).

[12] It is undisputed that the local school board adopted the GHSA policy.

> In accordance with Georgia law . . . any athlete who exhibits signs, symptoms, or behaviors consistent with a concussion shall be immediately removed from the practice or contest and shall not return to play until an appropriate health care professional has determined that no concussion has occurred. . . . Any athlete diagnosed with a concussion shall be cleared medically by an appropriate health care professional prior to resuming participation in any in any future practice or contest. The formulation of a gradual return to play protocol shall be part of the medical clearance.

The GHSA policy further provided that "[e]ach school must distribute to every athlete and his/her parent/guardian an information sheet that includes: the dangers of concussion injuries, the signs/symptoms of concussion, and the concussion management protocol outlined in this by-law." The form provided to Appellants specifically identified loss of consciousness as a "common sign[ ] and symptom[ ] of concussion."

Here, Appellants allege that the Coach Defendants were aware that Eric lost consciousness, but did not instruct him to be cleared by Bradberry before playing in the game where he was injured. Although neither Georgia law nor the GHSA's policy define "signs, symptoms, or behaviors consistent with a concussion[,]" the Concussion Awareness Form does identify some symptoms. A coach may have to

8

exercise discretion in determining whether a player is exhibiting some of the listed symptoms, however loss of consciousness is objective. Accordingly, upon becoming aware that Eric lost consciousness, the Coach Defendants had a ministerial duty to "immediately remove[ Eric] from the practice" and not allow him to "return to play until an appropriate health care professional ha[d] determined that no concussion ha[d] occurred." Viewing the facts in favor of Eric for purposes of the summary judgment motion, the Coach Defendants cannot establish as a matter of law that they are entitled to official immunity. The trial court erred in granting summary judgment on that basis.[13]

---

[13] See, e. g., *Wilson*, 374 Ga. App. at 672 (1) (holding that the school administrator's duty to conduct a bullying investigation was ministerial once the administration had been informed that one student was threatening another with a knife); *Hall v. Acker*, 367 Ga. App. 411, 414-417 (1) (885 SE2d 266) (2023) (holding that a school system policy which provided that, following the use of pepper spray on a "subject," "officers will flush the eyes and face of the affected subject with clean water as soon as possible after the subject is secured" created a ministerial duty because it gave no discretion as to whether to flush the subject's eyes); *Wanless v. Tatum*, 244 Ga. App. 882, 883-884 (536 SE2d 308) (2000) (holding that a policy requiring employees to report and investigate citizen complaints of unsafe road conditions was ministerial); *Lincoln County v. Edmond*, 231 Ga. App. 871, 875 (2) (501 SE2d 38) (1998) (A duty to remove a tree blocking a road was ministerial because "[i]t [was] undisputed that [the road superintendent] had a duty to remove the tree lying across [the road]. County policy granted [the superintendent] the discretion to choose the manner in which this task would be performed. Such 'discretion,' however, did not change the fact that the tree must be removed.").

2. Appellants argue the trial court erred in finding that they failed to establish the element of causation. Here, we disagree.

It is well established that to recover for injuries caused by another's negligence, a plaintiff must show four elements: a duty, a breach of that duty, causation and damages. With respect to causation, a plaintiff must prove that the defendant[s'] negligence was both the "cause in fact" and the "proximate cause" of the injury. To show that [ ] defendant[s'] conduct was the cause in fact of a plaintiff's injuries, the plaintiff ordinarily must prove that, but for this conduct, he or she would not have sustained the injury. To show proximate cause, on the other hand, the question is not whether the defendant[s'] conduct caused the injury, but whether the causal connection between the defendant[s'] conduct and the injury resulting therefrom is too remote to be the basis of a recovery. The requirement of proximate cause constitutes a limit on legal liability; it is a policy decision that, for a variety of reasons the defendant[s'] conduct and the plaintiff's injury are too remote for the law to countenance recovery.[14]

Here, Appellants first argue that the Defendants' failure to place Eric into the concussion protocol caused his spinal cord injury because the concussion protocol would have prohibited him from playing in the game only two days after the practice

---

[14] (Citations and punctuation omitted.) *Ware v. Jackson*, 357 Ga. App. 470, 476-477 (2) (848 SE2d 725) (2020).

injury. While it is of course factually correct that Eric could not have gotten hurt in a game he did not play in, "our case law makes clear that liability does not attach on the basis that one's negligence furnishes only the condition or occasion for another to cause injury."[15]

Appellants' second causation argument is likewise unavailing. Appellants point to testimony from Eric's treating neurosurgeon, Dr. Faiz Ahmad, that it was *possible* that if Eric had a concussion that clouded his judgment, it may have led to a second injury if Eric was not fully attentive. Dr. Ahmad further testified that, hypothetically, if the effects of a concussion are continuing, a person might do something that is "not routine." He later clarified that here, "these are two different injuries. . . . One is a brain injury, one is a spine injury. One doesn't predispose [you] to another per se, unless, you know, you're not recovered from a concussion and your mind is not 100 percent, and you do something crazy or whatever that you [would] not normally do, then you can have that injury." When asked whether he could say with a reasonable degree of medical probability that Eric's practice injury was causally connected to his game injury, Dr. Ahmad responded that he could not do so without more information.

---

[15] *Ware*, 357 Ga. App. at 478 (2).

Even assuming Eric sustained an undiagnosed concussion during the practice, there is no evidence that the effects of a concussion were lingering when Eric played in the game two days later. The day after the practice injury and the day of the game, Eric participated in weight training without issue. Indeed, Eric testified that until he was injured, it was just a "normal game" where he was "doing good" and had made tackles. He did not feel like anything was wrong with him at that time. "[F]or a plaintiff's negligence claim to survive summary judgment, the evidence of causation must be based on more than mere guesses or speculation."[16] Appellants thus were required to "point to specific evidence giving rise to a triable issue[,]"[17] which they

---

[16] *Seymour Elec. & Air Conditioning Svc., Inc. v. Statom*, 309 Ga. App. 677, 679 (710 SE2d 874) (2011).

[17] (Citation and punctuation omitted.) *Cowart v. Widener*, 287 Ga. 622, 623 (1) (a) (697 SE2d 779) (2010).

have failed to do.[18] The trial court did not err in granting summary judgment to Defendants.

3. In light of our disposition of Divisions 1 and 2, we need not address Appellants' remaining arguments.

*Judgment affirmed. Brown, C. J., and Barnes, P. J., concur.*

---

[18] Appellants attempt to rely on claims that Eric lowered his head during the game tackle where he was injured, even though he was trained not to do so, as evidence that Eric's concentration or judgment may have been impaired due to a concussion. Eric, however, denied that he lowered his head during the game tackle. Additionally, Eric testified that he "accidentally dropped [his] head" during the practice drill tackle that caused the initial injury, a time at which there is no allegation that Eric was suffering from a concussion.